## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                          )
BLOCK & LEVITON LLP,                      )
                                          )
         Plaintiff,                       )
                                          )
v.                                        )
                                          )
FEDERAL TRADE COMMISSION,                 )        Civil Action No. 19-12539-PBS
                                          )
         Defendant,                       )
                                          )
FACEBOOK, INC.,                           )
                                          )
         Defendant-Intervenor.            )
_____)

## PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANT AND DEFENDANT-INTERVENOR'S MOTIONS FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   PROCEDURAL HISTORY ............................................................................................ 4

III.  ARGUMENT ................................................................................................................ 4

    A.   Legal Standard.......................................................................................................... 4

    B.   The Court Should Deny Summary Judgment Because the FTC's *Vaughn* Index is
       Inadequate ................................................................................................................. 5

    C.   FOIA Exemption 4 Does Not Apply to the Facebook Settlement Documents .............. 8

       1.   Settlement Documents are not "Commercial" Under FOIA Exemption 4 ......... 12

       2.   Documents Sent By The FTC To Facebook Were Not "Obtained From A
          Person" Under Exemption 4 ................................................................................. 17

       3.   The FTC Was Not Harmed By Its Prior Release of Settlement Documents with
          Facebook and Will Not Be Harmed By Release Here ......................................... 18

IV.   CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Allergan, Inc. v. Teva Pharm. USA, Inc.*,
   Case No. 2:15-cv-1455-WCB, 2017 WL 132265 (E.D. Tex. Jan. 12, 2017) .......................... 11

*Am. Civ. Liberties Union v. C.I.A.*,
   710 F.3d 422 (D.C. Cir. 2013) .................................................................................................. 7

*Animal Legal Def. Fund, Inc. v. Dep't of the Air Force*,
   44 F. Supp. 2d 295 (D.D.C. 1999) ............................................................................................ 7

*Aqualliance v. U.S. Army Corps of Engineers*,
   243 F. Supp. 3d 193 (D.D.C. 2017) .......................................................................................... 5

*Ayuda, Inc. v. Federal Trade Commission*,
   70 F. Supp. 3d 247 (D.D.C. 2014) ............................................................................................ 5

*Baker & Hostetler LLP v. U.S. Dep't of Com.*,
   473 F.3d 312 (D.C. Cir. 2006) ................................................................................................ 14

*Bd. of Trade of City of Chicago v. Commodity Futures Trading Comm'n*,
   627 F.2d 392 (D.C. Cir. 1980) ................................................................................................ 17

*Caracofe v. Drake Kryterion, Inc.*,
   No. CV-18-02595-PHX-SPL, 2020 WL 122873 (D. Ariz. Jan. 10, 2020) .............................. 11

*Chicago Tribune Co. v. F.A.A.*,
   No. 97 C 2363, 1998 WL 242611 (N.D. Ill. May 7, 1998) ..................................................... 13

*Church of Scientology Int'l v. U.S. Dep't of Justice*,
   30 F.3d 224 (1st Cir. 1994) ............................................................................................... 5, 12

*COMPTEL v. Fed. Commc'ns Comm'n*,
   910 F. Supp. 2d 100, (D.D.C. 2012) ................................................................................. 5, 17

*Ctr. for Auto Safety v. U.S. Dep't of Treasury*,
   133 F. Supp. 3d 109 (D.D.C. 2015) ........................................................................................ 17

*Ctr. for Investigative Reporting v. U.S. Dep't of Labor*,
   424 F. Supp. 3d 771, (N.D. Cal. 2019) .............................................................................. 15, 16

*Det. Watch Network v. ICE*,
   215 F. Supp. 3d 256 (S.D.N.Y. 2016) ..................................................................................... 17

*F.D.I.C. v. Singh*,
   977 F.2d 18 (1st Cir. 1992) ................................................................................. 13

*Food Mktg. Inst. v. Argus Leader Media*, __ U.S. __,
   139 S. Ct. 2356 (2019) ........................................................................... 14, 16, 18

*Gulf & W. Indus., Inc. v. United States*,
   615 F.2d 527 (D.C. Cir. 1979) ...................................................................... 14, 18

*In re Subpoena Issued to Commodity Futures Trading Comm'n*,
   370 F. Supp. 2d 201 (D.D.C. 2005) .................................................................... 11

*Jordan v. U.S. Dep't of Labor*,
   308 F. Supp. 3d 24 (D.D.C. 2018) ...................................................................... 12

*King v. U.S. Dep't of Justice*,
   830 F.2d 210 (D.C. Cir. 1987) ............................................................................. 8

*M/A-Com Info. Sys., Inc. v. U.S. Dep't of Health and Human Servs.*,
   656 F. Supp. 691 (D.D.C. 1986) .................................................................. 14, 17

*Madison County, N.Y. v. U.S. Department of Justice*,
   641 F.2d 1036 (1st Cir. 1981) .......................................................................... 1, 9

*Matsushita Elec. Indus. Co., Ltd. v. Mediatek, Inc.*,
   No. C-05-3148 MMC (JCS), 2007 WL 963975 (N.D. Cal. Mar. 3, 2007) ............................ 11

*NAACP Legal Def. Fund and Educ. Fund, Inc. v. U.S. Dep't of Justice*,
   612 F. Supp. 1143 (D.D.C. 1985) ................................................................... 1, 13

*National Parks Conservation Association v. Morton*,
   498 F.2d 765 (D.C. Cir. 1974) .......................................................................... 16

*Pub. Citizen Health Research Grp. v. Dep't of Health, Educ. & Welfare*,
477 F. Supp. 595 (D.D.C. 1979) ........................................................................ 15

*Pub. Citizen Health Research Grp. v. FDA*,
   704 F.2d 1280 (D.C. Cir. 1983) ..................................................................... 17, 18

*Pub. Citizen v. U.S. Dep't of Health and Human Servs.*,
   975 F. Supp. 2d 81 (D.D.C. 2013) ............................................................ 6, 13, 14

*Pub. Emps. for Environ. Resp. v. Office of Science and Tech. Policy*,
   825 F. Supp. 2d 104 (D.D.C. 2011) ..................................................................... 6

*Shapiro v. U.S. Dep't of Justice,*
  153 F. Supp. 3d 253 (D.D.C. 2016) .......................................................................... 8

*United States v. Facebook, Inc.,*
  No. 19-2184 (TJK), 2020 WL 1975785 (D.D.C. Apr. 23, 2020) .............................. 1

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*,
  489 U.S. 749 (1989) .............................................................................................. 5, 8

*Wash. Research Project, Inc. v. Dept' of Health, Ed. & Welfare*,
  504 F.2d 238 (D.C. Cir. 1974) .............................................................................. 15

**Statutes**

5 U.S.C. § 552(b) ............................................................................................... 3, 9, 12

**Rules**

Fed. R. Evid. 408 ...................................................................................................... 11

**Other Authorities**

*Communications between FTC and Facebook, March 10, 2011 through March 20, 2018*, FED. TRADE COMM'N (June 2018) ......................................................................... 19

DISSENTING STATEMENT OF COMMISSIONER REBECCA KELLY SLAUGHTER, *In the Matter of FTC v. Facebook*, FED. TRADE COMM'N (July 24, 2019)...................................................................... 2

DISSENTING STATEMENT OF COMMISSIONER ROHIT CHOPRA, *In the Matter of FTC v. Facebook*, FED. TRADE COMM'N (July 24, 2019) ............................................................................ 2

*FOIA: Frequently Requested Records*, FED. TRADE COMM'N, https://www.ftc.gov/about-ftc/foia/frequently-requested-records/facebook .......................................................... 18

*FTC Approves Final Settlement with Facebook*, FED. TRADE COMM'N (Aug. 10, 2012) ............ 18

*FTC consumer protection year in review offers 2020 vision for your business*, FED. TRADE COMM'N (Jan. 8, 2020) ..................................................................................... 20

*Google Will Pay $22.5 Million to Settle FTC Charges it Misrepresented Privacy Assurances to Users of Apple's Safari Internet Browser*, FED. TRADE COMM'N (Aug. 9, 2012) ......................... 1

Lesley Fair, *FTC's $5 billion Facebook settlement: Record-breaking and history-making*, FED. TRADE COMM'N. BUS. BLOG (July 24, 2019) ................................................................. 1

Tony Romm, *Facebook will have to pay a record-breaking fine for violating users' privacy: But the FTC wanted more*, THE WASHINGTON POST (July 22, 2019).................................... 2

iv

## I.    Introduction

This case hinges on the question of whether settlement negotiations with the government are exempt from disclosure under FOIA. As both the First Circuit and the U.S. District Court for the District of Columbia have held unequivocally: they are not.[1]

In July 2019, the FTC[2] and Facebook[3] announced that the Company had agreed to pay a $5 billion fine as part of a negotiated settlement of an FTC investigation. The Settlement resolved charges that Facebook violated the terms of the 2011 Consent Decree by repeatedly failing to protect users' privacy.[4] The $5 billion penalty was the largest fine in FTC history—222 times larger than the previous record for a privacy fine (a $22.5 million penalty against Google in 2012).[5] Earlier this year, the U.S. District Court for the District of Columbia approved the settlement, while noting that "the unscrupulous way in which the United States alleges Facebook violated both the law and the administrative order [were] stunning."[6]

---

[1] *Madison County, N.Y. v. U.S. Dep't of Justice*, 641 F.2d 1036, 1043 (1st Cir. 1981); *NAACP Legal Def. Fund and Educ. Fund, Inc. v. U.S. Dep't of Justice*, 612 F. Supp. 1143, 1147 (D.D.C. 1985). Defendants fail to mention, let alone attempt to distinguish, these cases.

[2] Defined terms shall have the same meaning as in Plaintiff's Complaint. Plaintiff has submitted, with this opposition, its Statement of Disputed Facts pursuant to L.R. 56.1. The disputed facts generally relate to Defendants' characterizations of certain information as "commercial" within the meaning of FOIA Exemption 4, which is fundamentally a legal question.

[3] The FTC and Facebook are collectively referred to herein as "Defendants."

[4] *See* Lesley Fair, *FTC's $5 billion Facebook settlement: Record-breaking and history-making*, FED. TRADE COMM'N. BUS. BLOG (July 24, 2019), https://www.ftc.gov/news-events/blogs/business-blog/2019/07/ftcs-5-billion-facebook-settlement-record-breaking-history.

[5] *Google Will Pay $22.5 Million to Settle FTC Charges it Misrepresented Privacy Assurances to Users of Apple's Safari Internet Browser*, FED. TRADE COMM'N (Aug. 9, 2012), https://www.ftc.gov/news-events/press-releases/2012/08/google-will-pay-225-million-settle-ftc-charges-it-misrepresented.

[6] *United States v. Facebook, Inc.*, No. 19-2184 (TJK), 2020 WL 1975785, at *1 (D.D.C. Apr. 23, 2020).

Plaintiff Block & Leviton LLP seeks certain documents relating to the negotiation of the Settlement. Plaintiff is a Boston-headquartered law firm that represents the Employees' Retirement System of Rhode Island in a related books-and-records action against Facebook in Delaware's Court of Chancery.[7] In the Delaware books-and-records litigation, ERSRI is seeking internal Facebook documents to investigate troubling reports that, in negotiating the Settlement, Facebook unfairly prioritized the interests of Facebook's CEO and controlling stockholder, Mark Zuckerberg, over the interests of the Company and its public stockholders.[8]

Here, Plaintiff seeks the following documents from the FTC:

> All communications between the FTC and Facebook from January 1, 2017
> to the present concerning the conduct described in the complaint in *United*

---

[7] *Emps. Ret. Sys. of R.I. v. Facebook, Inc.*, 2020-0085-VCS (Del. Ch.). For the avoidance of doubt, while ERSRI is a plaintiff in the Delaware books-and-records litigation, it is not a party to this action.

[8] *See, e.g.*, Tony Romm, *Facebook will have to pay a record-breaking fine for violating users' privacy: But the FTC wanted more*, THE WASHINGTON POST (July 22, 2019) (reporting that Facebook "steadfastly opposed placing Zuckerberg under order, including during meetings with commission negotiators starting last year. The tech giant's internal briefing materials reflected its willingness to cease settlement talks and send the matter to court, if necessary, to protect their executive from one of the most severe penalties the FTC could levy on him directly."); DISSENTING STATEMENT OF COMMISSIONER REBECCA KELLY SLAUGHTER, *In the Matter of FTC v. Facebook*, FED. TRADE COMM'N (July 24, 2019) (attached as Exhibit A to the accompanying Declaration of Lauren Milgrom ("Milgroom Dec.")) at 6 ("I would have preferred to name Mr. Zuckerberg in the complaint and in the order. I disagree with the decision to omit him now, and I strenuously object to the choice to release him and all other executives from any potential liability for their roles to date. I am concerned that a release of this scope is unjustified by our investigation and unsupported by either precedent or sound public policy"), https://www.ftc.gov/system/files/documents/public_statements/1536918/182_3109_slaughter_sta tement_on_facebook_7-24-19.pdf; DISSENTING STATEMENT OF COMMISSIONER ROHIT CHOPRA, *In the Matter of FTC v. Facebook*, FED. TRADE COMM'N (July 24, 2019) (Milgroom Dec., Ex. B) at 11 ("Because the law imposes affirmative obligations on officers and directors whose firms are under order, uncovering their role in potential violations is critical to any investigation. It is especially critical in this investigation, which involved a firm that is tightly controlled by its founder, CEO, and Chairman, Mark Zuckerberg. Given the structure of his ownership and his special voting rights, it is hard to imagine that any of the core decisions at issue were made without his input."), https://www.ftc.gov/system/files/documents/public_statements/1536911/chopra_dissenting_state ment_on_facebook_7-24-19.pdf.

*States of America v. Facebook, Inc.*, Case No. 19-cv-2184 (D.D.C.), the related Cambridge Analytica inquiry, and the July 24, 2019 settlement related thereto, including but not limited to:

    a)       Any and all draft settlement agreements sent to or from Facebook;

    b)       Documents sufficient to show the monetary settlement offers made to Facebook or proposed by Facebook to settle the FTC charges; and

    c)       Any and all documents concerning the liability of or remedies directed at Mark Zuckerberg, personally.

The FTC largely withheld responsive documents, frequently in explicit deference to Facebook.[9] Facebook and the FTC rely on FOIA Exemptions 6 and 7(C)[10] to justify the decision to withhold the names of certain people on personal privacy grounds. With one exception (detailed below), Plaintiff does not challenge that determination and has no objection to the FTC redacting certain names prior to producing the documents.

The core of the parties' dispute relates to documents that the FTC has withheld on the basis of FOIA Exemption 4, which requires that the information be commercial, confidential, and "obtained from a person."[11]

But the FTC's deference has gone too far. At the status conference, the FTC suggested that

---

[9] *See* FTC *Vaughn* index, D. 20-1 at 30 (withholding or redacting 269 out of 569 documents "based upon Facebook Inc.'s objection"). Indeed, the FTC's deference to Facebook is consistent with its position at the initial scheduling conference that it needed to "discuss[] with Facebook as to whether Facebook [was] going to take the position that those documents [that Plaintiff requested] contain[ed] trade secret information or similar protected intellectual property. That's not a determination that the FTC can make because it's not the FTC's intellectual property." D. 23 (Transcript of Feb. 19, 2020 hearing) at 10:19-24.

[10] FOIA Exemption 6 exempts from disclosure information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

[11] *See* 5 U.S.C. § 552(b)(4) (exempting "trade secrets and commercial or financial information obtained from a person and privileged or confidential.").

it planned on withholding or redacting only "trade secret information or similar protected intellectual property."[12] It is, perhaps, possible that certain materials at the margins of Plaintiff's request could contain "trade secret information or similar protected intellectual property." But the documents at the core of Plaintiff's request—settlement documents,[13] documents sufficient to show the progress of negotiations between the FTC and Facebook over the monetary component of the Settlement, and documents analyzing Zuckerberg's liability—do not. FOIA mandates that the FTC release these documents, as the FTC previously did with respect to draft settlement documents relating to its 2012 settlement with Facebook.

## II.   Procedural History

On October 30, 2019, Plaintiff submitted its FOIA Request to the FTC. D. 1-1. The FTC responded that all responsive documents were available on its website.[14] D. 1-2. Plaintiff filed an administrative appeal. D. 1-3. The FTC denied that appeal. D. 1-4. Plaintiff filed its complaint in this Court on December 18, 2019. D. 1. The Court granted Facebook's motion to intervene on February 20, 2020. D. 15.

On May 15, 2020, Defendants moved for summary judgment. D. 19, 21.

## III.   Argument

### A.   Legal Standard

Summary judgment is appropriate only when "there is no genuine dispute as to any material

---

[12] D. 23 (Transcript of Feb. 19, 2020 hearing) at 10:19-24.

[13] Plaintiff uses the term "settlement documents" to refer collectively to the documents that Defendants have categorized as "settlement drafts" and "settlement communications." *See* D. 22 ¶¶ 13, 16.

[14] This response was incorrect. The FTC admits that it "reconsider[ed]" its position that all responsive documents were posted on its website after consulting with Facebook, but it does not assert any legal basis for withholding the documents in the first instance. D. 20 at ¶¶ 7-8.

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 8 U.S.C. § 552(a)(4)(B)). "FOIA requires [a] 'strong presumption in favor of disclosure.'" *Aqualliance v. U.S. Army Corps of Eng'rs*, 243 F. Supp. 3d 193, 196 (D.D.C. 2017) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). "Accordingly, summary judgment for an agency is appropriate only if the agency proves that it has 'fully discharged its [FOIA] obligations[.]'" *Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 259 (D.D.C. 2014) (quoting *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996)).

B. The Court Should Deny Summary Judgment Because the FTC's *Vaughn* Index is Inadequate

"To satisfy its burden to show the applicability of an exemption, an agency may rely on detailed affidavits, declarations, a *Vaughn* index, in camera review, or a combination of these tools." *COMPTEL v. Fed. Commc'ns Comm'n*, 910 F. Supp. 2d 100, 111 (D.D.C. 2012). Here, the FTC has submitted an affidavit and a *Vaughn* index. D. 20-1 at 30. A *Vaughn* index must "afford[] the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 231 (1st Cir. 1994) (citation and internal quotation marks omitted). Where, as here, the *Vaughn* index is inadequate to allow the plaintiff or the court to assess the government's claimed exemptions, summary judgment should be denied.[15] *See e.g.*, *COMPTEL*, 910 F. Supp. at 114 (denying summary judgment where *Vaughn* index was "inadequate to demonstrate that the agency ha[d] properly invoked FOIA exemptions to withhold redacted

---

[15] Plaintiff does not dispute the adequacy of the FTC's affidavit nor the reasonableness of its search.

information"); *Pub. Emps. for Environ. Resp. v. Office of Sci. and Tech. Policy*, 825 F. Supp. 2d 104 (D.D.C. 2011) (same).

*First*, the *Vaughn* index contains inadequate descriptions of documents that the FTC withheld for purportedly "commercial content." For 269 entries, out of a total 569, the FTC claims to have withheld documents on the basis of their commercial content, yet the titles and descriptions for the documents bear no relationship to the type of commercial content that FOIA exempts from disclosure. Notably, for every one of these documents, the FTC asserts that its decision to redact or withhold the content was "based upon Facebook, Inc.'s objection." In deference to Facebook, it appears the FTC designated nearly every type of information it obtained from the Company as having commercial content.[16] For example:

- "4/12/2019 email with subject line 'Call at 11?'" (Entry No. 9);
- "5/3/2019 Email attachment regarding settlement document" (Entry No. 48)
- "5/31/2019 email with subject line 'Facebook'" (Entry No. 69);
- "5/21/2019 email attachment titled '2019-05-20 to FB.docx'" (Entry No. 76);
- "4/13/2019 email chain . . . with subject line 'Fwd: Dave Kling's weekend availability'" (Entry No. 243);
- "6/26/2018 email chain . . . with subject line 'Re: Meeting Tuesday'" (Entry No. 285);
- "4/13/2019 email chain . . . with subject line 'Re: Timing?'" (Entry Nos. 419-20).

The Court can easily deny summary judgment as to the documents with these woefully inadequate descriptions. *See Pub. Citizen v. U.S. Dep't of Health and Human Servs.*, 975 F. Supp. 2d 81, 104 (D.D.C. 2013) ("Without more information about the commercial nature of the information contained in the disclosure log summaries, the Court has insufficient information to evaluate whether these documents are being properly withheld. Consequently, the Court denies

---

[16] Plaintiff also disagrees that settlement documents are "commercial" information as a matter of law, as discussed in Section III(C)(1) below.

summary judgment. . . ."); *see also Animal Legal Def. Fund, Inc. v. Dep't of the Air Force*, 44 F. Supp. 2d 295, 303 (D.D.C. 1999) (denying summary judgment when the agency's declaration merely "state[d]" that the company's "proposals contain[ed] 'commercial and financial information'" but failed to provide a "description of the documents to permit the [requester] or [the] Court to test the accuracy of that claim").[17]

*Second*, the *Vaughn* index is inadequate because, in 322 instances, the FTC redacted the names of Facebook employees included on responsive communications. Plaintiff has no quarrel with the FTC redacting third party names, contact information, or the names of Facebook employees who are inconsequential to the FTC investigation.

Nevertheless, fourteen pages into the FTC's Stearns Declaration (and notably absent from the FTC's memorandum of law and *Vaughn* index), the FTC admits that it also "withheld names and/or identifying information of individuals of investigative interest." D. 20-1 ¶ 46. Because the FTC did not indicate which names were redacted based on their "investigative interest," Plaintiff cannot evaluate whether the FTC properly applied FOIA Exemptions 6 and 7(C). Pursuant to the "official acknowledgement" doctrine, "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information." *Am. Civ. Liberties Union v. C.I.A.*, 710 F.3d 422, 426 (D.C. Cir. 2013). So the FTC could not, for example, redact the names of Zuckerberg or Facebook's Chief Operating Officer, Sheryl Sandberg, for "investigative interest," because its investigation of those executives is public knowledge.[18] Therefore, the FTC must specify whether, for each name redacted for investigative interest, that investigation is now public—and if so, un-redact the name.

---

[17] At a minimum, the Court should require the FTC to amend its *Vaughn* index to add substantive descriptions of the purportedly "commercial" content.

[18] *See, e.g.*, DISSENTING STATEMENT OF COMMISSIONER ROHIT CHOPRA at 18.

*Cf. Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 292 (D.D.C. 2016) (upholding redactions of names of parties of "investigative interest" to the FBI because *Vaughn* index and declaration specified that the redacted names "ha[d] not been previously officially disclosed by the FBI as individuals of investigative interest").

*Finally*, the *Vaughn* index is inadequate because, in some cases, the FTC redacted and withheld documents without providing an explanation on the *Vaughn* index. For example, the *Vaughn* index shows that the following pages have been released to Plaintiff, when in fact they have been withheld in full: FTC-0350-51, 0912, 0920, 1036, 1091, 1128, 1486, 1645, and 2032. Furthermore, the index states that the following documents have been released in full, when in fact they have been partially redacted: FTC-0350-51, 0819, 1537-38.[19] Because the FTC has not justified these withholdings and redactions on the index, Plaintiff cannot engage in "adequate adversary testing" of the claimed exemptions. *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987).

C.  FOIA Exemption 4 Does Not Apply to the Facebook Settlement Documents

Even if the FTC had prepared a proper *Vaughn* index, it would not be entitled to summary judgment because FOIA Exemption 4 does not apply to settlement documents. At the initial scheduling conference, the Court intuited that "there must be cases directly on point."[20]

And there are.

The controlling precedent is *Madison County, N. Y. v. U.S. Department of Justice*, in which the First Circuit was asked "whether the Freedom of Information Act (FOIA), 5 U.S.C. s 552,

---

[19] This list is intended to be exemplary, rather than exhaustive. Because the burden lies with the FTC to justify its withholdings, *see, e.g.*, *Reporters Comm. For Freedom of Press*, 489 U.S. at 755, the Court should order the FTC to review the *Vaughn* index in full and account for all discrepancies.

[20] D. 23 (Transcript of Feb. 19, 2020 hearing) at 10:1-2.

requires that government documents relating to the settlement of a lawsuit involving the government be disclosed." 641 F.2d 1036, 1038 (1st Cir. 1981). The First Circuit answered that question in the affirmative. *Id.* at 1043.[21]

In *Madison County*, the plaintiff sought to obtain certain records relating to the settlement of a lawsuit between the Oneida Indian Nation and the Department of Justice, including (1) "[d]ocuments relating to settlement offers and negotiation strategy within the Justice Department," (2) "[l]etters by and between attorneys for the Oneida nation and the Justice Department concerning the government's decision whether to represent the Oneida nation," and (3) "letters from the Justice Department to the Oneida attorneys discussing the settlement[.]" *Id.* at 1039.

The district court "ruled that the FOIA's exemption four," (on which Defendants rely here) did not apply to any of the documents. *Id.* It ordered the production of documents in Category (2), but allowed the government to withhold documents in Category (1) pursuant to FOIA Exemption 5 (which neither Defendant has argued here),[22] and in Category (3) based on public policy concerns about promoting settlement. *Id.*

On appeal, the government abandoned any reliance on Exemption 4, relying instead on the public policy argument and Exemption 5. The First Circuit "decline[d] the government's invitation to create a broad-ranging 'settlement exemption'" and reversed the district court's holding on that issue. *Id.* at 1041. The First Circuit concluded that "letters originating outside of government initiating communication designed to procure private advantage, resemble[d] … settlement

[21] Notably, neither Facebook nor the FTC addresses, let alone attempts to distinguish *Madison County*.

[22] Exemption 5 allows the government to withhold documents (1) that are "inter-agency or intra-agency memorandums or letters", and (2) that "would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

communications," and "fell within no FOIA exemption." *Id.* at 1042. It ordered the production of all but one of the documents in Category (3)—remanding as to that single document so that the district court could rule on a Rule 60(b) motion arguing that the document was also protected by Exemption 5. *Id.* at 1043. Category (3)—"letters from the Justice Department to the Oneida attorneys discussing the settlement"—is, of course, the category most akin to the documents sought here. This Court should reach the same conclusion.

Moreover, the United States District Court for the District of Columbia—the source of the vast majority of FOIA caselaw—has twice considered whether FOIA contains an implicit exception for settlement documents and squarely held that it does not.

In *Center for Auto Safety v. Department of Justice*, the court considered whether documents concerning the Department of Justice's consent to modifications of an antitrust consent decree were exempt from disclosure under FOIA based on a "settlement negotiation privilege." 576 F. Supp. 739, 748-49 (D.D.C. 1983), *vacated in part on other grounds*, 1983 WL 1955, at *1 (granting partial, unopposed motion for reconsideration). There, as here, the government argued that "disclosure would undermine and frustrate its efforts at antitrust settlement negotiations and place it at a competitive disadvantage to other litigants if it [were] forced to disclose antitrust consent decree documents both during and after settlement negotiations in this and in all other cases." *Id.* at 748-49. The DOJ further argued that "the disclosure of the documents would interfere with all consent decree negotiations, present or future." *Id.* at 753. The court was "sympathetic to the DOJ's position and . . . acknowledge[d] the strong public interest in settlement activities." *Id.* Nonetheless, the court rejected the DOJ's attempts to read a "settlement negotiation privilege" into FOIA, pursuant to Federal Rule of Evidence 408 or otherwise. *Id.* at 749, 755. The court explained that the government's misgivings about releasing settlement documents were "for legislative not

judicial concern" and ordered the DOJ to disclose the documents. *Id.* at 748.

Two years later, the government made the same argument. It lost again. In *NAACP Legal Defense Fund and Education Fund, Inc. v. U.S. Department of Justice*, plaintiffs sued the DOJ under FOIA to obtain letters from local government entities regarding the DOJ's request for modifications to the terms of existing consent decrees on affirmative action. 612 F. Supp. 1143 (D.D.C. 1985). The DOJ argued that the information was subject to a FOIA exemption or, in the alternative, that the court should develop a "new" settlement negotiation privilege. *Id.* at 1145. The court, relying on *Center for Auto Safety*, concluded that disclosure was "clearly not within any exemption of the FOIA statute, or the subject of any bona fide privilege" and ordered the DOJ to release the requested documents. *Id.* at 1147.[23]

In *Center for Auto Safety* and *NAACP*, the government unsuccessfully urged the court to read in the settlement negotiation privilege through FOIA Exemptions 5 (for inter- and intra-agency communications) and 7(A) (for records compiled for law enforcement purposes). These holdings have stood undisturbed for 35 years.[24] Here, the FTC has reached even farther afield and

---

[23] The FTC also argues incorrectly that the settlement documents are privileged under the common law, as incorporated into the Federal Rules of Evidence. D. 20 n.16. The Federal Rules of Evidence, however, do not limit *discovery* of settlement negotiations, but rather their *admissibility* to prove liability or impeach a witness. *See* Fed. R. Evid. 408. Furthermore, courts nationwide have held there is no federal settlement privilege. *See, e.g.*, *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 210, 212 (D.D.C. 2005) ("declin[ing] plaintiffs' invitation to recognize a federal settlement privilege" and listing cases); *Allergan, Inc. v. Teva Pharm. USA, Inc.*, Case No. 2:15-cv-1455-WCB, 2017 WL 132265, at *3 (E.D. Tex. Jan. 12, 2017) (same); *Matsushita Elec. Indus. Co., Ltd. v. Mediatek, Inc.*, No. C-05-3148 MMC (JCS), 2007 WL 963975, at * 5-6 (N.D. Cal. Mar. 3, 2007) (same).

[24] Although Plaintiff is unaware of any other attempts by the government since *NAACP* to read a settlement negotiation privilege into FOIA, courts nationwide continue to rely on *NAACP* in other contexts. *See, e.g.*, *Caracofe v. Drake Kryterion, Inc.*, No. CV-18-02595-PHX-SPL, 2020 WL 122873, at *8 (D. Ariz. Jan. 10, 2020) (relying on *NAACP* in holding that the court could not bar a non-party in litigation from using settlement discussions in her separate EEOC charge of discrimination).

attempted to shoehorn "settlement negotiations" into an exemption for "commercial" information. This novel interpretation of Exemption 4 is inconsistent with both the plain text and policy underpinnings of FOIA.

### 1.  Settlement Documents are not "Commercial" Under FOIA Exemption 4

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). To qualify for the exemption, information must: (1) be a "trade secret" or "commercial or financial information," (2) be "obtained from a person," *and* (3) be "privileged or confidential."[25] *Jordan v. U.S. Dep't of Labor*, 308 F. Supp. 3d 24, 42 (D.D.C. 2018), *aff'd*, 2018 WL 5819393 (D.C. Cir. Oct. 19, 2018). "The government bears the burden of demonstrating the applicability of a claimed exemption." *Church of Scientology Int'l*, 30 F.3d at 228. Defendants have failed to meet their burden here, because even if the withheld documents are confidential, they are not "commercial" within the meaning of Exemption 4.[26]

Defendants' argument for the purported "commercial" nature of the settlement documents stretches the statutory text beyond recognition. Specifically, their primary argument is that the settlement documents should be withheld in their entirety because revealing the "specific areas of negotiation" would "reveal Facebook's commercial priorities." D. 20 ¶ 11; *see also* D. 20 at 15; D. 22 at 14-16. Indeed, the FTC has gone so far as to refuse to produce "draft settlement documents

---

[25] Defendants do not contest that the information must satisfy all three prongs.

[26] Rather than focus on the purportedly "commercial" aspect of Plaintiff's Request, Defendants devote most of their briefs to the "confidential" aspect of Exemption 4. But even if the information the FTC withheld is confidential, it must *also* be commercial to fall under Exemption 4. Plaintiff has no reason to doubt the FTC's attestation that "Facebook provided this information to the FTC on a confidential basis." D. 20-1 ¶ 36. Nevertheless, under Defendants' view, any information Facebook shared with the FTC and designated "in confidence" would be exempt from disclosure— regardless of its contents. That approach cannot be reconciled with the plain text of Exemption 4.

initially prepared by FTC staff" on the theory that "FOIA requesters [could] determine, by backward engineering from the final public filings, the specific settlement terms Facebook negotiated over, thus revealing the terms that Facebook valued from a commercial standpoint." D. 20-1 (Stearns Dec.) ¶ 38.

The argument proves far too much. *See Pub. Citizen*, 975 F. Supp. at 100 ("Pfizer urges an even broader construction of Exemption 4, stating that 'a company has a "commercial interest" in all records that relate to every aspect of the company's trade or business.' … This is plainly incorrect."). Defendants have taken an exemption meant to protect trade secrets and distorted it into one expansive enough to conceal from public view *any* information about *any* government negotiation with *any* corporation. Such a broad reading would effectively negate the "commercial or financial" requirement of Exemption 4. *See F.D.I.C. v. Singh*, 977 F.2d 18, 22 (1st Cir. 1992) ("It is a canon of construction that every word and phrase of an instrument is if possible to be given meaning, and none is to be rejected as surplusage if any other course is rationally possible.") (quoting *Tupper v. Hancock*, 319 Mass. 105, 108 (1946)); *see Chicago Tribune Co. v. F.A.A.*, No. 97 C 2363, 1998 WL 242611, at *3 (N.D. Ill. May 7, 1998) ("If Congress intended [] exemption [4] to cover documents containing information concerning anything that occurs during a commercial operation, the words 'commercial information' are scarcely suitable words to express the idea.").

Indeed, the FTC implicitly acknowledges that there is a significant difference between commercial information and the settlement documents. In its supporting affidavit, the FTC divides the withheld documents into *separate categories* of, on the one hand, "confidential commercial information," and on the other, "settlement communications," and "settlement negotiation documents." D. 20-1 ¶¶ 36-37, 40.

13

Courts have declined to adopt a broad reading that would transform information about a corporate entity's "priorities" into "commercial information." FOIA does not define the term "commercial," *Pub. Citizen*, 975 F. Supp. 2d at 99, but decades of case law mandate that it be given its "ordinary meaning[]," *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). Courts have recognized that "information [that] is static and does not appear to have anything to do with the ongoing creation or selling of products, nor [is] … 'instrumental' to conducting commerce," is not "commercial." *Pub. Citizen*, 975 F. Supp. 2d at 105.

In the principal cases relied upon by the FTC, the courts held that "commercial" information under Exemption 4 was information about business operations that was relevant to the ongoing creation or selling of products: retail stores' food stamp redemption data, *Food Mktg. Inst. v. Argus Leader Media*, __ U.S. __, 139 S. Ct. 2356 (2019); market conditions for domestic lumber companies, *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 319 (D.C. Cir. 2006); "actual costs for units produced," "actual scrap rates," "break-even point calculations" and "actual cost data," *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 530 (D.C. Cir. 1979); "accounting and other internal procedures," *M/A-Com Info. Sys., Inc. v. U.S. Dep't of Health and Human Servs.*, 656 F. Supp. 691, 692 (D.D.C. 1986); and a "promotional monitoring program . . . pertain[ing] directly to the methods by which [the company] sells its products," *Pub. Citizen*, 975 F. Supp. 2d at 109. This type of operational business data is very different than information about the exchange of settlement offers in negotiations with the government.

Defendants also offer the circular argument that settlement documents are "commercial" under Exemption 4 because Facebook has a "commercial interest" in the information. D. 20 at 12-13. But "not every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4." *Pub. Citizen Health Research Grp.*, 704 F.2d at 1290; *Ctr. for*

*Investigative Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771, 779 (N.D. Cal. 2019) ("Essentially, the Government is asking the Court find exempt any statistical information pertaining to employees simply because the business is a commercial enterprise. This expansive interpretation has been rejected.").

For example, in *British Airports Auth. v. U.S. Department of State*, the court explained that "information relating to the strategy of airline companies in negotiating with [British Airports Authority]" did not "fall within the ordinary meaning of the terms 'commercial' or 'financial'" and accordingly held that those negotiating strategies were not protected under Exemption 4. 530 F. Supp. 46, 49 (D.D.C. 1981).

Similarly, the D.C. Circuit has cautioned against an overly expansive reading of "commercial." *Wash. Research Project, Inc. v. Dept' of Health, Ed. & Welfare*, 504 F.2d 238, 244 (D.C. Cir. 1974). In *Washington Research Project*, the court held that a "noncommercial scientist's research design [was] not literally a trade secret or item of commercial information," despite claims that its "misappropriation," which "would be facilitated by premature disclosure, [would] deprive[] [the researcher] of the career advancement and attendant material rewards in which the academic and scientific market deals." *Id.* While sympathetic to the interests of the scientist, the court explained that it "[could] not, consistently with [FOIA]'s recognized mandate to construe exemptions narrowly, extend them by analogies that lead so far away from the plain meaning of Exemption 4." *Id.* (internal citations omitted); *see also Pub. Citizen Health Research Grp. v. Dep't of Health, Educ. & Welfare*, 477 F. Supp. 595, 605 (D.D.C. 1979) (holding that in-depth medical service reviews that contained "no data concerning fees, payment schedules, or other commercial arrangements [and] . . . no information about secret formulas or rare treatment methods" were not "commercial" under Exemption 4), *rev'd on other grounds*, 668 F.2d 537 (D.C. Cir. 1981).

Because settlement documents are not "commercial" information, the FTC has failed to meet its burden to show that Exemption 4—or any other exemption—shields the documents from disclosure.

Facebook offers similar arguments, which fare no better. The Company asserts that "courts have routinely rejected efforts, such as those of Plaintiff here, to force government agencies to release materials related to confidential settlement negotiations." D. 22 at 1. Tellingly, however, Facebook cites only two cases for this proposition—neither of which is binding or persuasive.

*Associated Press v. U.S. Dep't of State* is an unpublished, two-page opinion in which the court warned that it "[did] not have the luxury of drafting a lengthy opinion that address[ed] every withholding in granular detail," but rather offered a "summary" of its reasoning. 15-cv-345 (RJL), 2016 WL 6476932, at *1 (D.D.C. Nov. 1, 2016). There, the parties' dispute centered on the "confidentiality" element and whether "the information [the company] submitted to the State Department was provided voluntarily or involuntarily." *Id.* at *2. In resolving the dispute, the court spent two sentences applying the now-defunct confidentiality test from *National Parks Conservation Association v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974), *abrogated by Food Marketing*, 139 S. Ct. at 2365.27 The opinion contains zero analysis of the "commercial" prong of Exemption 4. And if, as here, "the information sought is not commercial in nature, the Court need not address whether the information is confidential." *Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d at 779.

---

27 In *Food Marketing*, the Supreme Court held that "[a]t least where commercial or financial information is both customarily and actually treated by its private owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." 139 S. Ct. at 2365-66. It did not address the "commercial" prong of Exemption 4.

Similarly uninstructive is *M/A-Com Information*, upon which Facebook relies heavily. D. 22 at 1-2, 9, 12. In *M/A-Com Information*, the district court granted an agency's claim under Exemption 4 for draft documents that contained "accounting and other procedures" relevant to a company's attempts to settle a debarment action with the government. 656 F. Supp. at 692-93. Nevertheless, the same court clarified in recent years that Exemption 4 applied to the documents in question in *M/A-Com Information* because they concerned "commercial or financial information that would separately qualify for Exemption 4 protection"—not because those documents were part of settlement negotiations. *COMPTEL*, 910 F. Supp. at 117.

### 2. Documents Sent By The FTC To Facebook Were Not "Obtained From A Person" Under Exemption 4

Plaintiff does not believe any of the settlement documents contain commercial information (subject, perhaps, to minimal redactions to shield true trade secrets or intellectual-property information). But even if some settlement documents did contain commercial information, the FTC still must disclose settlement documents created *by* the FTC and sent *to* Facebook because the FTC's drafts are not "obtained from a person" under FOIA Exemption 4. *See Bd. of Trade of City of Chicago v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 404 (D.C. Cir. 1980) (concluding that Exemption 4 is "restrict[ed]" to information "not been generated within the Government"); *Det. Watch Network v. ICE*, 215 F. Supp. 3d 256, 262-63 (S.D.N.Y. 2016) (holding that contract terms were not "obtained from a person" because they were "negotiated and agreed on by the Government" rather than "obtained from" the contractors and "simply incorporated into the final contracts"); *cf. Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133 F. Supp. 3d 109, 124 (D.D.C. 2015) (ordering agency to revise *Vaughn* index where index did not permit court to "determine whether the documents contained information 'obtained from a person' rather than information generated within Treasury"). The FTC insists that "[i]nformation in an agency-

generated document is still 'obtained from a person' if such information was supplied to the agency by a person or could allow others to 'extrapolate' such information." D. 20 at 14 (quoting *Gulf & W. Indus.*, 615 F.2d at 529-30). But it beggars belief that Facebook proposed every aspect of the settlement documents. And, to borrow the FTC's own words, such information is protected under Exemption 4 only "if [it] reveal[s] confidential *commercial* information supplied in the first instance by a private entity." *Id.* (emphasis added). Therefore, at a bare minimum, the Court should order the FTC to release its own draft settlement documents.

     3.   *The FTC Was Not Harmed By Its Prior Release of Settlement Documents with Facebook and Will Not Be Harmed By Release Here*

Finally, Plaintiff recognizes that FOIA requires the Court to balance "disclosure and other governmental interests." *Food Mktg.*, 139 S. Ct. at 2366. The FTC argues that releasing the withheld information would cause "Facebook and other entities [to] be less forthcoming to the FTC in future investigations." D. 20 at 17.

History proves otherwise.

As the Court is aware, in 2012, the FTC reached an agreement with Facebook to settle charges that "Facebook violated the rights of its users by telling them they could keep their information on Facebook private, and then repeatedly allowing it to be shared and made public."[28] Since that time, the FTC has posted troves of Facebook documents that it identifies as "Frequently Requested Records."[29] The FTC identifies this page as a "Hot Topic." *Id.* Among these documents are precisely the type of settlement communications that Plaintiff seeks here.

For example, in the following cover email and redline, the FTC proposed naming

---

[28] *FTC Approves Final Settlement with Facebook*, FED. TRADE COMM'N (Aug. 10, 2012). The 2012 Consent Decree formed the basis for liability in the 2019 Facebook matter.

[29] *FOIA: Frequently Requested Records*, FED. TRADE COMM'N, https://www.ftc.gov/about-ftc/foia/frequently-requested-records/facebook.

Zuckerberg individually, and then edited the agreement to remove him.30



The settlement communications and the redlined agreement pictured above (among other settlement documents) have been posted on the FTC website *since June 2018*. Plaintiff first informed counsel for the FTC that these documents were publicly available in November 2019, *and they are still posted on the FTC's website as of the date of this filing*.31 Yet the parade of horribles that Defendants predict (*i.e.*, if the FTC released similar documents from the 2019 Settlement) has not come to pass. Since June 2018, the FTC was not only able to secure "investigation materials" from Facebook and impose a $5 billion fine, but it has also achieved numerous, high-value settlements with other companies, including Equifax ($575 - $700 million

---

30 *Communications between FTC and Facebook, March 10, 2011 through March 20, 2018*, FED. TRADE COMM'N (June 2018), https://www.ftc.gov/system/files/documents/foia_requests/ftc_fb_commcns_mar11-mar18.pdf (attached as Milgroom Dec., Ex. C) at 110, 113 (cover letter and red-lined complaint).

31 *Id.*

settlement), YouTube ($170 million settlement), and TikTok ($5.7 million settlement).[32] In sum, the FTC was not harmed by its prior release of settlement documents with Facebook and will not be harmed by releasing them here.

## IV.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the motions for summary judgment and order the FTC to produce a corrected *Vaughn* index.

Respectfully submitted,

Dated: June 5, 2020

/s/ Jason M. Leviton_____
Jason M. Leviton (BBO # 678331)
Joel A. Fleming (BBO # 685285)
Lauren Godles Milgroom (BBO # 698743)
260 Franklin St., Suite 1860
Boston, MA 02110
Tel:  (617) 398-5600
Fax:  (617) 507-6020

*Attorneys for Plaintiff*
*Block & Leviton LLP*

---

[32] *See FTC consumer protection year in review offers 2020 vision for your business*, FED. TRADE COMM'N (Jan. 8, 2020), https://www.ftc.gov/news-events/blogs/business-blog/2020/01/ftc-consumer-protection-year-review-offers-2020-vision-your.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorneys of record by action of the Court's ECF system on June 5, 2020.


/s/ *Lauren Godles Milgroom*\_\_\_\_\_
Lauren Godles Milgroom