## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                   )
BLOCK & LEVITON LLP,               )
                                   )
                 Plaintiff,        )
                                   )         Civil Action
v.                                 )         No. 19-12539-PBS
                                   )
FEDERAL TRADE COMMISSION           )
                                   )
                 Defendant,        )
                                   )
     and                           )
                                   )
FACEBOOK, INC.,                    )
                                   )
          Defendant-Intervenor.    )
_____)

### MEMORANDUM AND ORDER

October 15, 2020

Saris, D.J.

### INTRODUCTION

Plaintiff Block & Leviton brings this action challenging the defendant Federal Trade Commission's ("FTC") denial of its request for documents related to the 2019 settlement with Defendant-Intervenor Facebook, Inc. ("Facebook"). The FTC and Facebook have moved for summary judgment, arguing that the withheld documents are exempt from disclosure under the Freedom of Information Act ("FOIA") Exemptions 3, 4, 6, and 7(C). Exemptions 3 and 4 permit the withholding of information that is confidential and commercial, while Exemptions 6 and 7(C) permit

the withholding of information whose release would constitute an unwarranted invasion of personal privacy.

After hearing, the Court **ALLOWS** in part and **DENIES** in part the FTC's motion for summary judgment (Docket No. 19); and **ALLOWS** in part and **DENIES** in part Facebook's motion for summary judgment (Docket No. 21).

**FACTUAL BACKGROUND**

The following facts drawn from the record are undisputed.

## I.   The 2019 Settlement

In 2012, the social networking company Facebook and the FTC entered into a consent order regarding the privacy and security of Facebook users. In 2018, the FTC announced that it was investigating whether Facebook had violated the 2012 consent order following reports that Cambridge Analytica, a data analytics firm, had obtained Facebook users' data. On July 24, 2019, the FTC and Facebook reached a $5 billion settlement agreement and filed a stipulated order in the United States District Court for the District of Columbia.

From 2018 through 2019, the FTC received over sixty FOIA requests for records relating to Facebook's compliance with the 2012 order and the 2019 settlement. The FTC FOIA Unit compiled approximately 3,600 pages of responsive records. After giving Facebook the opportunity to object to release of these records, and considering those objections, the FTC determined that

approximately 3,000 pages should be withheld due to their

"confidential commercial" nature. Dkt. 20-1, Declaration of

Dione Jackson Stearns ("Stearns Decl."), ¶¶ 20-23. On or about

October 5, 2019, the FTC posted the releasable records on its

website.

## II.  **The FOIA Request**

Plaintiff is a law firm which represents the Employees'

Retirement System of Rhode Island in a related action against

Facebook in Delaware's Court of Chancery. It seeks settlement

documents to investigate reports that "in negotiating the [2019]

Settlement, Facebook unfairly prioritized the interests of

Facebook's CEO and controlling stockholder, Mark Zuckerberg,

over the interests of the Company and its public stockholders."

Dkt. 25 at 7.  On October 30, 2019, Plaintiff submitted a FOIA

request to the FTC seeking the following records:

> All communications between the Federal Trade
> Commission ("FTC") and Facebook, Inc. ("Facebook")
> from January 1, 2017 to the present concerning the
> conduct described in the complaint in United States of
> America v. Facebook, Inc., No. Case No. 19-cv- 2184
> (D.D.C.), the related Cambridge Analytica inquiry, and
> the July 24, 2019 settlement related thereto,
> including but not limited to:
>
> a. Any and all drafts of the settlement agreement sent
> to Facebook or sent by Facebook;
>
> b. Documents sufficient to show the monetary amounts
> of offers made to Facebook or proposed by Facebook to
> settle the FTC complaint; and

      c. Any and all documents concerning the liability of
      or remedies directed at Mark Zuckerberg, personally.

Dkt. 1-3.

     In a letter dated November 6, 2019, the FTC responded to Plaintiff's FOIA request that "these records have been frequently requested and all releasable records are posted on our website." Dkt. 1-4.  No additional records were released.

     On November 8, 2019, Plaintiff filed an appeal with the FTC, stating that "[a]lthough there are some documents pertaining to Facebook on the FTC website, the documents I specifically requested are not." Dkt. 1-5 at 1. Plaintiff pointed to the prior release of the 2011 draft settlement documents to question the FTC's application of FOIA Exemption 4 to the 2019 draft settlement documents. The FTC FOIA Team Lead confirmed that the requested records were not posted on the website and that it would not release them.

     On December 9, 2019, the FTC denied Plaintiff's appeal, concluding that the settlement communications between the FTC and Facebook were properly withheld under Exemption 4. The FTC said that the release of the 2011 settlement documents had been "inadvertent[]." Dkt. 20-1, Stearns Decl. ¶ 29.

### III. Response to the Present Action

     On December 18, 2019, Plaintiff filed this action against the FTC, requesting that the Court order the FTC to provide the

requested documents. Facebook subsequently joined the case as a defendant-intervenor. The FTC FOIA Unit asked Facebook to reconsider some of its earlier stated objections and to provide additional information to support Facebook's continued objections to releasing records. Facebook continued to oppose releasing the 2019 draft settlement documents on the basis that it "would harm Facebook by allowing competitors to gain insights into Facebook's privacy practices without investing the substantial resources that Facebook has invested in its Privacy Program, as well as gain insight into, and possibly adopt, usurp, or otherwise disrupt, Facebook's commercial priorities and business operations." Dkt. 22-1, Declaration of Jessica Hertz ("Hertz Decl."), ¶ 16. The FOIA Unit also consulted with FTC staff who provided additional information regarding the FTC's investigation and negotiations with Facebook leading up to the 2019 settlement.

Between April 15, 2020 and May 14, 2020, the FTC made multiple productions of responsive records to Plaintiff, including previously released records with some redactions revised as well as newly released documents. In total, the FTC released 368 documents consisting of 678 pages and withheld 201 documents consisting of 2,625 pages. In connection with these productions, the FTC prepared and provided a Vaughn index which briefly describes the withheld documents and the applicable FOIA

exemptions and justifications for withholding. The withheld documents include communications and draft settlement agreements between the FTC and Facebook and a March 11, 2019 confidential report submitted to the FTC by a consultant retained by Facebook to support Facebook's settlement negotiations. The FTC submitted its Vaughn index and the Declaration of Dione Jackson Stearns in support of its motion for summary judgment. Dkt 20-1, Stearns Decl. According to this declaration, the documents withheld under Exemptions 3 and 4 "reveal Facebook's confidential and proprietary information about its operations, including its technology, products, and business structure." Id. ¶ 36. The FTC also withheld "the substantive negotiations between the FTC and Facebook." Id. ¶ 37.

## LEGAL STANDARDS

### I.   The FOIA Statutory Scheme

"FOIA cases are typically decided on motions for summary judgment." ACLU v. U.S. Dep't of Educ., 320 F. Supp. 3d 270, 276 (D. Mass. 2018); see, e.g., Stalcup v. CIA, 768 F.3d 65, 69 (1st Cir. 2014). A movant is entitled to summary judgment when the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In the FOIA context, the "federal agency bears the burden of proving that it has complied with its obligations under FOIA. . . . [S]ummary judgment for an agency

is appropriate only if the agency proves that it has fully discharged its FOIA obligations." Ayuda, Inc. v. Fed. Trade Comm'n, 70 F. Supp. 3d 247, 259 (D.D.C. 2014) (citations and internal quotation marks omitted).

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exemptions. 5 U.S.C. § 552. If an agency refuses to provide the requested records, the requesting party may file suit in federal court and obtain an injunction "order[ing] the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). For a district court to have jurisdiction to issue such an injunction, the requesting party must show that the agency has "(1) improperly (2) withheld (3) agency records." U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989) (citation and internal quotation marks omitted).

The policy underlying FOIA is "'one of broad disclosure, and the government must supply any information requested by any individual unless it determines that a specific exemption, narrowly construed, applies.'" N.H. Right to Life v. U.S. Dep't of Health & Human Servs., 778 F.3d 43, 49 (1st Cir. 2015) (quoting Church of Scientology Int'l v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994)). Generally, "any doubts" regarding the application of an exemption should be "resolved in favor of disclosure." Carpenter v. U.S. Dep't of Justice, 470

F.3d 434, 438 (1st Cir. 2006). "The government bears the burden of proving that withheld materials fall within one of the statutory exemptions, and district courts are required to make de novo determinations as to the validity of the asserted exemptions." Id. (citations omitted).

"Typically, the agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions. If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." Shapiro v. United States Dep't of Justice, 893 F.3d 796, 799 (D.C. Cir. 2018) (citations and internal quotation marks omitted). The First Circuit has held that where an affidavit demonstrates by "sufficient description [that] the contested document logically falls into the category of the exemption indicated," the court "need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith." Bell v. United States, 563 F.2d 484, 487 (1st Cir. 1977).

To establish the applicability of a FOIA exemption, agencies often submit a Vaughn index — a "comprehensive list of

all documents that the government wants to shield from
disclosure in . . . [FOIA] litigation, each document being
accompanied by a statement of justification for nondisclosure."
N.H. Right to Life, 778 F.3d at 48 n.3 (citation and internal
quotation marks omitted); see Vaughn v. Rosen, 484 F.2d 820
(D.C. Cir. 1973). A Vaughn index must "afford[] the FOIA
requester a meaningful opportunity to contest, and the district
court an adequate foundation to review, the soundness of the
withholding." Church of Scientology Int'l, 30 F.3d at 231
(citation and internal quotation marks omitted). If a court
finds a Vaughn index inadequate "and no other support is
provided," the court "could choose to permit discovery limited
to specified documents, it could conduct an in camera review of
selected documents, it could order release of some documents, or
it could direct a combination of these procedures." Id. at 240
(footnote omitted). A court may also deny summary judgment if it
finds a Vaughn index inadequate to demonstrate proper invocation
of FOIA exemptions. COMPTEL v. Fed. Commc'ns Comm'n, 910 F.
Supp. 2d 100, 114 (D.D.C. 2012); see also Pub. Emps. for
Environ. Resp. v. Office of Sci. and Tech. Policy, 825 F. Supp.
2d 104, 105 (D.D.C. 2011) (finding "summary judgment is
inappropriate . . . because [the agency]'s Vaughn index is
legally insufficient for the Court to determine whether the
redactions and withholdings were proper").

## II.  <u>FOIA Exemptions</u>

### A. Exemptions 3 and 4 – Confidential Commercial Information

Relying on Exemptions 3 and 4, the FTC withheld "(1)
Facebook's responses to the FTC's demands for information in its
investigation of Facebook's 2012 order violations, and (2)
documents revealing the substantive settlement negotiations
between the FTC and Facebook, principally concerning the
contents of a proposed federal court complaint, a stipulated
federal court order, an administrative order, and associated
documents." Dkt. 20 at 12. The FTC explained:

> Disclosure of the specific areas of negotiation
> would reveal the terms that Facebook valued from
> a commercial standpoint. For example, information
> regarding negotiations of the civil penalty
> sought by the Commission could directly affect
> Facebook financially; if released, this
> information could embolden other global
> regulators and plaintiffs in civil suits with
> which Facebook is currently engaged.  Public
> reporting of the critical points of contention
> between Facebook and the FTC is also likely to
> affect public perception of Facebook and impact
> the value of the Company.

<u>Id.</u> at 5–6 (citing Stearns Decl. ¶¶ 37, 40). Narrowing its
initial request, Plaintiff challenges the application of
Exemption 4 only as to the settlement documents. The parties
agree that the settlement documents satisfy the "confidential"
prong of the Exemption 4 analysis, but they dispute whether the
information is "commercial" and "obtained from a person."

Subject to certain requirements, Exemption 3 permits an agency to withhold information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). This exemption applies to Section 6(f) of the Federal Trade Commission Act, which prohibits the FTC from "mak[ing] public any trade secret or any commercial or financial information which is obtained from any person and which is privileged or confidential." 15 U.S.C. § 46(f). As Section 6(f) largely mirrors Exemption 4, these provisions are "coextensive," and Exemption 4's legal standards control. Center for Digital Democracy v. FTC, 189 F. Supp. 3d 151, 159 (D.D.C. 2016). To invoke Exemption 4, "the agency must establish that the withheld records are (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." Jordan v. U.S. Dep't of Labor, 308 F. Supp. 3d 24, 42 (D.D.C. 2018) (citations and internal quotation marks omitted).

**1. Commercial**

Exemption 4 "shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.'" Food Marketing Institute vs. Argus Leader Media, 139 S.Ct. 2356, 2363 (2019)(citing 5 U.S.C. § 552(b)(4)) While FOIA does not define "commercial," the Supreme Court has recently reaffirmed that courts should determine what the term's "ordinary, contemporary, common meaning" was when Congress

enacted FOIA in 1966. Id. (quoting Perrin v. United States, 444
U.S. 37, 42 (1979); see N.H. Right to Life, 778 F.3d at 49 ("The
FOIA does not define the term 'commercial,' so courts have given
the term its ordinary meaning." (citations omitted)). At that
time, "commercial" meant "of, in, or relating to commerce."
Webster's Third International Dictionary 456 (1961).

Case law is consistent with that definition. See National
Ass'n of Homebuilders v. Norton, 309 F.3d 26, 38 (D.C. Cir.
2006) ("Information is commercial under [Exemption 4] if, in and
of itself, it serves a commercial function or is of a commercial
nature." (cleaned up)); see also Pub. Citizen Health Research
Grp. v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983). Courts have
found a "broad" range of information commercial. See, e.g., N.H.
Right to Life, 778 F.3d at 50 (nonprofit's manual, fees, and
collections policies); Jordan v. U.S. Dep't of Labor, 273 F.
Supp. 3d 214, 230 (D.D.C. 2017) (citing Baker & Hostetler LLP v.
U.S. Dep't of Com., 473 F.3d 312, 319 (D.C. Cir. 2006))("status
of operations regarding a business contract"); Pub. Citizen
Health Research Grp., 704 F.2d at 1290 (health and safety data
bearing on "marketing approval for . . . products"); but see
British Airports Auth. v. U. S. Dep't of State, 530 F. Supp. 46,
49 (D.D.C. 1981) ("information relating to the strategy of
airline companies in negotiating with [British Airports
Authority]" not commercial).

To assert, however, that "a company has a 'commercial interest' in all records that relate to every aspect of the company's trade or business" would be "plainly incorrect." Pub. Citizen v. U.S. Dep't of Health and Human Servs., 975 F. Supp. 2d 81, 100 (D.D.C. 2013). Consistent with the narrow construction given to FOIA exemptions, courts have cautioned that not all information submitted to the government by a commercial entity qualifies for protection under Exemption 4. Pub. Citizen Health Research Grp., 704 F.2d at 1290. See also British Airports Auth., 530 F. Supp. at 49 ("Not every type of information provided to the government by an entity engaged in commerce falls within (b) (4).").

Facebook and the FTC argue that the withheld settlement documents are "commercial" because they reveal Facebook's commercial priorities and business strategies. Facebook submitted an affidavit by Jessica Hertz, a Director and Associate General Counsel, who generally stated that the settlement drafts reveal Facebook's "commercial priorities and business practices and strategies," as well as its "Board operations, governance structure, and business operations, and substantial information about its Privacy Program." Dkt. 22-1, Hertz Decl. ¶ 10. The FTC took a similarly capacious approach, going so far as to include any points of contention that are "likely to affect public perception of Facebook and impact the

value of the Company." Dkt. 20 at 6 (citing Stearns Decl. ¶¶ 37, 40). Yet the FTC fails to explain document-by-document why each draft contains "commercial" information as commonly understood, which does not necessarily include all documents which hurt a company's reputation or the reputation of an executive. The Vaughn index appears to incorporate Facebook's objections whole-hog without any explanation to the Court so it can independently consider the applicability of Exemptions 3 and 4. As the FTC acknowledged, the agency must give "reasonably detailed explanations why any withheld documents fall within an exemption." New York Times Co. v. U.S. Dep't of Justice, 756 F.3d 100, 112 (2d Cir. 2014) (citation omitted).

For example, the FTC's Vaughn index describes "Document No. 9" as "4/12/2019 email with subject line 'Call at 11?' From: Moore, Robin (FTC) To: Royall, M. Sean (FB Counsel)," and states that it was withheld in part under "5 U.S.C. § (b)(4); 5 U.S.C. § (b)(3), 15 U.S.C. § 46(f)" with the following justification:

> Pursuant to 5 U.S.C. §§ (b)(3) and (b)(4) of the FOIA, as well as 15 U.S.C. § 46(f), and based upon Facebook, Inc.'s objection, the FTC withholds the commercial content of the email. This information is commercial information obtained from Facebook that is confidential and not ordinarily released to the public. In addition to protecting Facebook, Inc.'s commercial interests, the FTC seeks to ensure the continued reliability and availability of the information it receives in the course of its settlement negotiations, which promotes the effective and efficient resolution of FTC law

enforcement  actions. All non-exempt information has been segregated and released.

Dkt. 20-1 at 33-34. This description does not provide sufficient detail for the Court to independently determine whether the withheld information "reveal[s] basic commercial operations," "relate[s] to the income-producing aspects of [Facebook's] business," or bears upon Facebook's "commercial fortunes." See Baker & Hostetler LLP, 473 F.3d at 319 (citations omitted). The FTC provides similarly inadequate descriptions and nearly identical justifications for every document withheld or withheld in part under Exemption 4.

Because neither the FTC's Vaughn index nor the Stearns Declaration provides "an adequate foundation" for the Court to review whether each withheld document contains commercial information, summary judgment for Defendants is inappropriate. See Church of Scientology Int'l, 30 F.3d at 231; see also Pub. Citizen, 975 F. Supp. 2d at 104 (denying summary judgment where, "[w]ithout more information about the commercial nature of the information contained in the disclosure log summaries, the Court has insufficient information to evaluate whether these documents are being properly withheld"). The Court orders the FTC to provide a more detailed explanation in its Vaughn index. The Court reserves the right to examine the documents in camera to determine whether they contain true commercial information.

**2. Obtained From a Person**

FOIA defines a "person" as an "individual, partnership, corporation, association, or public or private association other than an agency." 5 U.S.C. § 551(2). Commercial information generated by and obtained from an agency thus does not necessarily qualify for Exemption 4. See Bd. of Trade of City of Chicago v. Commodity Futures Trading Comm'n, 627 F.2d 392, 404 (D.C. Cir. 1980), abrogated on other grounds, U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 598 (1982) (restricting the application of FOIA Exemption 4 "to data which have not been generated within the Government"); see also Crooker v. U.S. Parole Comm'n, 730 F.2d 1, 9 (1st Cir.), cert. granted, vacated on other grounds, 469 U.S. 926 (1984) (stating "information obtained from inside the government not exempt" under Exemption 4 (citation omitted)); cf. Madison Cty., N.Y. v. U.S. Dep't of Justice, 641 F.2d 1036, 1040 (1st Cir. 1981)(declining to create an exemption for government settlement documents but stating, "We are sympathetic to the logic and force of this policy plea. . . . Knowledge that written settlement communications will be available to anyone . . . will to some extent impede this means." (internal citation omitted)).

However, where agency-generated documents contain commercial information originally "obtained from a person outside the government" or "information supplied by [an

external person] could be extrapolated," such information falls within Exemption 4. Gulf & W. Indus., Inc. v. United States, 615 F.2d 527, 529–30 (D.C. Cir. 1979).

Settlement documents sent from Facebook to the FTC plainly satisfy the "from a person" prong. See 5 U.S.C. § 551(2). Settlement documents originating from the FTC and sent to Facebook, however, may qualify as "from a person" only where Facebook is the source of commercial information contained within them. See Gulf & W. Indus., 615 F.2d at 529–30. Facebook's argument that readers could reverse-engineer Facebook's commercial priorities by tracking changes in the settlement terms from draft to draft likely stretches Exemption 4 too far. See Washington Research Project, Inc. v. Dep't of Health, Ed. & Welfare, 504 F.2d 238, 245 (D.C. Cir. 1974) (FOIA exemptions are meant to be "construe[d] narrowly."). The items redacted in the government report in Gulf & Western Industries were "actual costs for units produced," "actual scrap rates," "break-even point calculations" and "actual cost data." 615 F.2d at 530. Where similar specific commercial information from Facebook is included in settlement proposals, redaction may be appropriate. But to the extent the FTC's proposals simply capture changes that are based on the content of negotiations with Facebook, those documents do not qualify as "from a person." Because the Vaughn index does not provide sufficient

17

detail for the Court to determine which documents originated by
the FTC may contain sufficiently specific or quoted information
from Facebook to meet this standard, summary judgment is denied
as to all of the documents at issue withheld under Exemption 4.

### B. Exemptions 6 and 7(C) – Personal Privacy

The FTC applied Exemptions 6 and 7(C) to redact "portions
of records containing third party names, of Facebook employees
who are not executives (i.e., Director level and below) . . .
email addresses and phone numbers of Facebook employees . . .
[, and] phone numbers and information identifying the conference
rooms used for meetings and calls." Dkt. 20-1, Stearns Decl.
¶ 46. Plaintiff does not oppose limited redactions for those
purposes.

The FTC also withheld names and identifying information of
"individuals of investigative interest" because "disclosure of
that information could cause harm to personal reputation." Id.
Plaintiff argues that to the extent the FTC redacted the name of
Facebook's Chief Executive Officer, Mark Zuckerberg, as an
individual of investigative interest, such redaction was
improper because the FTC's investigation of Zuckerberg is public
knowledge and was officially acknowledged in the dissenting
statements of FTC Commissioners Rohit Chopra and Rebecca Kelly
Slaughter. The FTC responds that the Commissioners' dissenting

opinions do not "disclose details of the FTC's investigative activities." Dkt. 29 at 6; see also Dkt. 30 at 16-17.

FOIA Exemption 6 exempts from disclosure information about individuals in "personnel and medical files and similar files" when disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Because Exemption 7(C) "protects similar interests and shields a broader range of information" than Exemption 6, courts often address only Exemption 7. Moffat v. U.S. Dep't of Justice, 716 F.3d 244, 250 n.4 (1st Cir. 2013) (citing Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1173 (D.C. Cir. 2011)). Exemption 7 "guards the privacy interests of a broad range of individuals, including government agents, personnel, confidential sources, and investigatory targets." Id. at 251.

Exemption 7 is tempered by the "official acknowledgment" doctrine. See ACLU v. C.I.A., 710 F.3d 422, 426 (D.C. Cir. 2013)("[W]hen an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that

information."). Information is "officially acknowledged" if "(1) the information requested [is] as specific as the information previously released; (2) the information requested . . . match[es] the information previously disclosed; and (3) the information requested . . . already [has] been made public through an official and documented disclosure." Cause of Action v. Treasury Inspector Gen. for Tax Admin., 70 F. Supp. 3d 45, 56-57 (D.D.C. 2014) (quoting ACLU v. U.S. Dep't of Def., 628 F.3d 612, 620-21 (D.C. Cir. 2011)). A plaintiff invoking the official acknowledgment doctrine "bear[s] the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." ACLU, 710 F.3d at 427 (citation and internal quotation marks omitted).

This Court finds that the dissenting statements of Commissioner Chopra and Commissioner Slaughter constitute official acknowledgement that the FTC was investigating Mr. Zuckerberg. Commissioner Chopra stated in his dissent, "We should have continued the investigation to obtain more data and evidence on what Facebook and its executives knew and how they profited. If Facebook failed to cooperate, the Commission had enough evidence to take Facebook and Zuckerberg to trial." Dkt. 26-2 at 22. Similarly, Commissioner Slaughter stated in her dissent, "The evidence the Commission amassed in its investigation more than justified initiating litigation against

Facebook and Mr. Zuckerberg alleging violations of the
Commission's order." Dkt. 26-1 at 2. The official acknowledgment
doctrine thus precludes the FTC from redacting Mr. Zuckerberg's
name from the settlement documents under Exemption 7(C).

## ORDER

For the foregoing reasons, the Court **ALLOWS IN PART**
Defendant's motion for summary judgment (Docket No. 19) and
Defendant-Intervenor's motion for summary judgment (Docket No.
21) as they relate to redaction of names and personal
information of employees in the settlement documents other than
Mr. Zuckerberg and **DENIES IN PART** Defendant's motion for summary
judgment (Docket No. 19) and Defendant-Intervenor's motion for
summary judgment (Docket No. 21) as they relate to (1) redaction
of Mr. Zuckerberg's name and (2) documents related to settlement
negotiations withheld on the basis of Exemption 4. Defendant is
ordered to produce the documents related to settlement
negotiations prepared by the FTC and sent to Facebook unless
they contain "commercial" information consistent with the
meaning of that term as discussed in this opinion, and Facebook
is the source of that information. See Gulf & W. Indus., 615
F.2d at 529-30. Defendant is ordered to produce the documents
related to settlement negotiations prepared by Facebook and sent
to the FTC unless they contain "commercial" information
consistent with the meaning of that term as discussed in this

opinion. Within 30 days, the FTC shall submit a Vaughn index

that provides detailed information as to why any withheld

document contains commercial information for which Facebook is

the source. The Court reserves the right to conduct an in camera

review to determine the applicability of Exemption 4.


SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge